UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
MARCY ZEVON,                              )
individually and on behalf of             )
all others similarly situated,            )
                                          )
                Plaintiff,              )
                                          )        No. 20-CV-7279
  - against -                            )
                                          )        CLASS ACTION
SYNCHRONY BANK,                           )
                                          )        JURY DEMANDED
                                          )
                Defendant.              )
---------------------------------------------------x

# COMPLAINT

1. This action seeks redress for the unlawful practices of Defendant Synchrony Bank ("Synchrony" or "Bank"), for providing, in connection with its credit-card accounts, disclosures with inaccuracies or omissions that violated the Truth in Lending Act ("TILA").

2. As alleged in greater detail below, Synchrony failed to furnish billing statements with complete and accurate information regarding account features and their corresponding annual percentage rates (the "Account Features and Rates Disclosure") as required by TILA and its implementing regulations.

3. TILA's purpose is to assure meaningful disclosure of credit terms in order to (i) allow consumers to compare more readily the various credit terms available; (ii) enable consumers to avoid the uninformed use of credit; and (iii)

1

protect consumers against inaccurate and unfair billing practices. 15 U.S.C. § 1601(a). The Bank's conduct violates the express provisions of the TILA and the applicable Regulations.

4. Defendant's failure to properly provide the required disclosure on the billing statements sent to Plaintiff and other consumers about the account features and the corresponding interest rates is contrary to the enunciated purposes of TILA; this inadequate disclosure, instead of allowing them to compare more readily the available terms of credit and enabling them to avoid the uninformed use of credit, does the opposite.

5. Defendant's failure to make this disclosure resulted in the economic harm, or the risk of economic harm, to Plaintiff and other consumers.

6. Moreover, Defendant's failure to make this disclosure resulted in the harm, or the risk of harm, to the levels of credit consumer protection and information that Congress mandated for open-end credit users like Plaintiff.

7. Under the private enforcement provisions of TILA, Plaintiff and the proposed class seek the recovery of statutory damages of up to $1,000,000 with respect to each of the Bank's failures to comply, plus actual damages.

## *Jurisdiction and Venue*

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 1640(e), because this action arises under TILA, 15 U.S.C. § 1601, *et seq.*

9. This Court should exercise review of this action because Defendant furnished a billing statement or statements to Plaintiff that, failing to fully and properly disclose the account's features and corresponding rates — in violation of the statute and its implementing regulatory provision — constituted a concrete and particularized injury to her informed use of credit and to her. U.S. Const., Art. III, §2, Cl. 1.

10. Venue is proper in this district because (1) the Bank transacts business in this district; (2) the Bank's principal place of business is in this district; (3) the Bank extended credit and provided the disclosures at issue to Plaintiff in this district; and (4) the interests of justice require maintenance of this action in this district.

## *Parties*

11. Plaintiff Marcy Zevon resides in New York County, New York.

12. Zevon is a "consumer," as that term is defined by § 1602(h) of TILA, because this complaint arises from the Bank's offer and extension of credit to Zevon, and her use of that credit account for personal, family or household purposes.

13. Synchrony is a corporation doing business in the State of New York and throughout the United States.

14. Synchrony's headquarters is located at 777 Long Ridge Road, Stamford, CT 06905.

15. Synchrony is a "creditor," as that term is defined by § 1602(f) of TILA and Regulation Z ("Regulation Z"), 12 C.F.R. §1026.2(a)(17), because at all relevant times, the Bank, in the ordinary course of its business, regularly – *i.e.*, more than 25 times a year – extended or offered to extend consumer credit for which a finance charge is or may be imposed, which is payable in more than four installments.

## *Factual Allegations*

16. Zevon is the holder of a Walmart credit card account issued by Defendant and used for household purposes.

17. The September 2019 billing statement that the Bank furnished Zevon, as required by TILA, on or about September 14, 2019, listed two categories in its Account Features and Rates Disclosure: Regular Purchases, which carried an annual percentage rate of 25.15%, and Cash Advances, which carried an annual percentage rate of 28.15%. Exhibit A.

18. None of the billing statements Synchrony provided Zevon included an Account Features and Rates Disclosure that the Bank provided a third feature known as "Quick Cash" that allowed Zevon to obtain a cash advance at a Walmart location at the lower Regular Purchases rate, according to the then-prevailing terms of the agreement.

19.     Zevon reviewed the aforementioned billing statements with its disclosures of features, and she could not determine from the Account Features and Rates Disclosure that she had access to this Quick Cash feature that allowed her to obtain a cash advance at a Walmart location at the lower Regular Purchases rate.

20.     Thus, the Bank's incomplete disclosure on the billing statements furnished to Zevon regarding account features — that is, its failure to provide information about a credit feature of her account and the corresponding APR — constituted a key omission or misrepresentation of the terms of the account that was a violation of Regulation Z and TILA.

21.     All members of the class, as defined herein, were furnished billing statements with an Account Features and Rates Disclosure that failed to completely and accurately disclose, in violation of the statute and its implementing regulations, all available features and their corresponding APRs.

## Class Allegations

22.     Zevon brings this action individually and on behalf of all persons similarly situated.

23.     The class consists of all persons who, within a year from the filing of this action, were provided a billing statement by Defendant with an Account Features and Rates Disclosure that did not specify the in-store Quick Cash feature and its APR, or any other regular account feature and its APR.

24.     Specifically excluded from this class are Defendants, any entity in which Defendants have a controlling interest, and the officers, directors, affiliates,

legal representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

25. The Class members for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable. In light of the tens of thousands of credit cards issued by the Bank, the number of class members is believed to be in excess of 1,000 persons.

26. Plaintiff's claims are typical of, if not identical to, all members of the Class and she does not have any interest that is adverse or antagonistic to the interests of the Class. If the conduct of the Bank violates TILA as applied to Zevon, then it violates TILA with respect to each member of the Class.

27. Plaintiff will fairly and adequately protect the interests of each member of the Class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

28. The Class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Defendant's actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to each Sub-class as a whole.

29. Each Class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Because damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impracticable for the class to seek redress individually for the wrongs they have suffered. Members of the Class do not have a particular interest in individually controlling the prosecution of separate actions.

30. There are questions of law and fact which are common to the members of the Class and which predominate over questions affecting only individual members. Common questions of law and fact include, but are not limited to, whether the Bank had a standardized procedure by which it made the Account Features and Rates Disclosure compliant with TILA and Regulation Z on every billing statement.

31. Upon information and belief, the Class consists of thousands of customers.

32. Thus, a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

   a) Common questions of law and/or fact predominate over any individual questions which may arise and, accordingly, there would accrue enormous savings to both the Court and the Sub-class in litigating the common issues on a class-wide instead of a repetitive individual basis; and

   b) The aggregate volume of the individual class members' claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation.

33. Class certification is also fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a

practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impede their ability to protect their interests. Moreover, since the actual monetary damages suffered by, or statutory damages available to, individual Class members may be relatively small, although significant in the aggregate, the expenses and burdens of individual litigation make it impossible or effectively impossible for the members of the Class to seek individual redress for the TILA violations committed by Defendant.

34. Plaintiff anticipates that there will be no difficulty in the management of this litigation. The records of the individuals encompassed within the Class are in Defendant's possession.

### *Violations of the Truth in Lending Act*

35. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

36. Congress originally authorized the Federal Reserve Board ("FRB" or "Board") to promulgate regulations granting it broad authority to effectuate the purposes of TILA; that authority is now delegated to the Bureau of Consumer Financial Protection ("Bureau"). 15 U.S.C. § 1604(a)(2008); 15 U.S.C. § 1604(a).

37. The set of regulations that the FRB promulgated to implement TILA is known as Regulation Z. 12 C.F.R. §226.1, *et seq.*

38. To reflect its assumption of TILA rulemaking authority as of July 21, 2011, the Bureau issued an interim final rule republishing Regulation Z and

adopting the FRB's promulgated regulations with only minor changes that did not impose any new substantive obligations on creditors. 76 FR 79768 (Dec. 22, 2011); 12 C.F.R. §1026.1, *et seq.*

39. TILA requires open-end credit issuers such as the Bank to send a periodic statement after the close of the billing period ("Billing Statement") to its customers with an outstanding balance on their credit card accounts. 15 U.S.C. §1637(b).

40. Over a decade ago, Congress began to more closely examine various practices in the credit card industry it deemed "abusive" and proceeded to amend TILA to put a halt to them. H.R. Rep. 111-88 at 10-12 (April 27, 2009); S. Rep 111-16 at 1-10 (May 4, 2009).

41. In addition to curbing the abusive practices, Congress, in keeping with the purposes of the statute — to help consumers avoid the uninformed use of credit, to help consumers better compare credit options, and to avoid unfair billing practices — amended TILA to provide for enhanced penalties to credit-card lenders who violated the statute: twice the finance charge involved, with a minimum of $500 and a maximum of $5,000, "or such higher amount as may be appropriate in the case of an established pattern or practice of such failures." 15 U.S.C. §1640(a)(2)(A)(iii).

42. Under TILA's Account Features and Rates Disclosure requirement, Amex was required to furnish Zevon on any billing statement, "[w]here one or more periodic rates may be used to compute the finance charge, each such rate, the range

of balances to which it is applicable, and . . . the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year." 15 U.S.C. §1637(b)(5).

43. Congress made a legislative judgment that a continuing Account Features and Rates Disclosure was the best way to inform consumers of their account's features and their corresponding interest rates. In other words, while Congress could have decided to counter some risk by requiring only a disclosure at account-opening or an annual disclosure, it instead undertook to further reduce that risk by requiring creditors to perpetually disclose this information to consumers on billing statements.

44. Moreover, the regulation promulgated by the Bureau implementing 15 U.S.C. §1637(b)(5) requires disclosure of "each periodic rate that may be used to compute the finance charge, the range of balances to which it is applicable, and the corresponding annual percentage rate[]" and that "[i]f different periodic rates apply to different types of transactions, the types of transactions to which the periodic rates apply shall also be disclosed." 12 C.F.R. §1026.7(b)(4).

45. The Official Staff Commentary further clarifies this regulation as follows:

> Disclosure of periodic rates—whether or not actually applied. Except as provided in §1026.7(a)(4)(ii), any periodic rate that may be used to compute finance charges (and its corresponding annual percentage rate) must be disclosed whether or not it is applied during the billing cycle. For example:
>   i.   If the consumer's account has both a purchase feature and a cash advance feature, the creditor must disclose the rate for each,

10

even if the consumer only makes purchases on the account during the billing cycle.

12 C.F.R. Pt. 1026 Supp. I, Comment 7(b)(4)-1.

46. The Bank sent Zevon and other consumers in the Class a billing statement with the Account Features and Rates Disclosure listing only two available features, a Regular Purchases feature which carried a certain APR and a Cash Advances feature carrying a higher APR.

47. However, at the time that disclosure was furnished, Zevon and other consumers in the Class, under the account agreement, also had access to an undisclosed third standard feature, an in-store cash advance.

48. As such, the Bank's incomplete Account Features and Rates Disclosure harmed Zevon concretely because she reviewed her disclosures and did not perceive from them that there was a third credit feature she could use to her benefit, the Quick Cash feature, denying her the full account information that Congress required she receive with her Billing Statement.

49. Moreover, the Bank's defective Account Features and Rates Disclosure caused Zevon a material risk of harm in that the omission placed her at risk of spending unnecessarily more for a cash advance, including a transaction fee and interest that accrued from the transaction date at a higher APR.

50. Similarly, each of the Bank's failures to disclose on the Billing Statements it sent to other members of the Class the complete and proper Billing Inquiries disclosure constituted a concrete harm or created a material risk of concrete harm to those consumers.

51.  With respect to each of the Bank's violations of TILA for noncompliant disclosures, as alleged above, Plaintiff and the Class are entitled to recover up to $1,000,000 in statutory damages, together with actual damages, costs and reasonable attorney fees. 15 U.S.C. § 1640(a).

52.  Alternatively, with respect to each of the Bank's violations of TILA for noncompliant disclosures, as alleged above, Plaintiff is entitled to recover up to $5,000.00 in individual statutory damages, together with any actual damages, costs and reasonable attorney fees. 15 U.S.C. § 1640(a)(2)(A)(iii).

**WHEREFORE**, Plaintiff Marcy Zevon prays on her behalf and on behalf of the Class that judgment be entered against Defendant as follows:

(1)  An order certifying the Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2)  Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

(3)  Actual damages as provided under 15 U.S.C. § 1640(a)(1);

(4)  Attorney fees, litigation expenses, and costs; and

(5)  Such other and further relief as to this Court may seem just and proper.

## *Jury Demand*

Plaintiff respectfully requests a trial by jury.

Dated: New York, New York
September 4, 2020

                                                Respectfully Submitted,

                                        By:   /s/ Brian L. Bromberg
                                                      Brian L. Bromberg
                                                      One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff</u>

Brian L. Bromberg
Joshua Tarrant-Windt
Bromberg Law Office, P.C.
26 Broadway, 27th Floor
New York, NY 10004
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Avenue
New York, NY 10025
(212) 837-2550